IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WALTER ANTHONY DeSHAZO                                                    PLAINTIFF

        v.                          Civil No. 4:06-cv-04026

JOHN PARTAIN, Sheriff, Sevier
County, Arkansas; and JAY
DOOLEY, DeQueen Ford-Chrysler                                            DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Walter Anthony DeShazo (hereinafter "Plaintiff"), filed this action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.  Plaintiff contends his constitutional rights were violated in March of 2003 when a 1999 Ford F-350 pickup truck was impounded and then repossessed.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2005), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Defendant Jay Dooley filed a motion for summary judgment (Doc. 12).  Defendant John Partain, the Sheriff of Sevier County, Arkansas, also filed a motion for summary judgment (Doc. 17).  To assist the Plaintiff in responding to the motions, I propounded a questionnaire (Doc. 20). Plaintiff filed a timely response to the questionnaire (Doc. 21) and the motions are now ready for decision.

### I.  Background

The following facts are taken from the submissions of the parties.  These facts are not disputed and form the basis of this Report and Recommendation.

Joseph G. Dooley, III, goes by the name Jay Dooley (hereinafter "Dooley").  *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1.  Dooley is the president and part-owner of DeQueen Ford-

Chrysler, Inc. (hereinafter "DFC"), an Arkansas Corporation, doing business in De Queen, Arkansas. *Id.* DFC is a franchised car dealership selling new and used cars in DeQueen, Arkansas. *Id.*

On April 29, 1998, DFC sold a 1999 Ford F-350 pickup truck to the DeShazo D-Bar Ranch, Inc. (hereinafter "the Ranch"). *Resp.* at ¶ 4. The Ranch was at that time an Arkansas corporation owned by Gretchelynn DeShazo,[1] the Plaintiff's Mother. *Id.* at ¶ 5. Gretchelynn signed the purchase papers on behalf of the Ranch and personally guaranteed payment of the purchase price. *Id.* at ¶ 6.

The Ranch financed the purchase of the truck with Ford Motor Credit Corporation (FMCC). *Resp.* at ¶ 7. DFC assigned the installment contract to FMCC and DFC had no further involvement in the financing, payment, or collection of the purchase price. *Id.* at ¶ 8.

The events that prompted the filing of this lawsuit occurred on March 6, 2003. That day, Deputy Brackett and Investigator Wiggins attempted to serve arrest warrants on Plaintiff that had been issued in connection with a search and seizure warrant which was executed on September 27, 2002. *Resp.* at ¶ 17. Brackett and Wiggins initially looked for Plaintiff in Horatio, Arkansas, but did not locate him there. *Id.* at ¶ 18.

The officers then went to Gretchelynn's farm at 136 DeShazo Road to see if Plaintiff was there. *Resp.* at ¶ 19. They drove through the property and found Plaintiff standing beside a water well near some chicken houses talking to Kenneth Dockins. *Id.* at ¶ 20. Brackett told Plaintiff that he was under arrest. *Id.* at ¶ 21. He was put in handcuffs and searched for weapons. *Id.* Brackett called for another patrol car to transport Plaintiff. *Id.* at ¶ 22.

Brackett then went to Gretchelynn's house and told her Plaintiff had been arrested. *Exhibit 1 at page 9 attached to the Motion for Summary Judgment filed by Sheriff Partain.* Brackett told Gretchelynn he was concerned that drug paraphernalia was on the property. *Id.* Brackett asked for permission to search. *Id.* Gretchelynn consented and signed a permission to search form. *Id.*

---

[1] In order to distinguish Plaintiff from Gretchelynn DeShazo, I will refer to Gretchelynn DeShazo by her first name.

Brackett told Gretchelynn that there were two vehicles there and asked what she would like to do with them. *Exhibit 1 at page 9 attached to the Motion for Summary Judgment filed by Sheriff Partain.* Gretchelynn said she wanted them towed from her property. *Id.* The truck previously purchased from DFC was one of the two vehicles. Plaintiff told the officers the truck was not running. *Resp.* at ¶ 27. A Jeep was also there. *Id.* Brackett returned to the chicken house where the officers entered and searched a shop building. *Exhibit 1 at page 9 attached to the Motion for Summary Judgment filed by Sheriff Partain.* A 9mm handgun was found in the shop. *Resp.* at ¶ 29. Nothing of evidentiary value was found in the truck. *Id.* at ¶ 30.

Gretchelynn told the officers that no payments had been made on the truck for an extended period of time and creditors were searching for it. *Exhibit 1 at page 9 attached to the Motion for Summary Judgment filed by Sheriff Partain.* The owner listed on the title of the truck was the Ranch. *Resp.* at ¶ 35. The second vehicle was a 1989 Jeep and was the vehicle Plaintiff was using at the time. *Resp.* at ¶ 32(A) & (B). The Jeep had an Oklahoma license plate VNF 182. *Id.* at ¶ 33. The Jeep was inventoried by the officers. *Id.* at ¶ 34.

The Sevier County Sheriff's Office contacted Jorge Rivas Garage and Wrecker (hereinafter Rivas) to tow the truck and the Jeep. *Dooley's Affidavit* at ¶ 8 and attached Exhibit C; *Resp.* at ¶ 36 & ¶ 43. Rivas is the owner and operator of Jorge Rivas Garage and Wrecker located in DeQueen, Arkansas. *Resp.* at ¶ 16. Rivas towed both vehicles to his property and impounded them. *Id.* at ¶ 38 & ¶ 43.

On March 11, 2003, Rivas mailed an abandoned vehicle notice to the title holder, the Ranch, at its address. *Rivas' Affidavit* at ¶ 6 and attached Exhibit B. The truck remained at Rivas' property until American Lender Company of North Little Rock, Arkansas, picked it up for FMCC on March 14, 2003. *Resp.* at ¶ 39. American Lender paid Rivas' towing and storage bill of $213.25. *Rivas' Affidavit* at ¶ 5.

Gretchelynn was also at Rivas' property on March 14th when American Lender came to pick up the truck. *Rivas' Affidavit* at ¶ 7. They offered to allow her to pay a specified amount of money to keep the truck. *Id.* Gretchelynn responded that she did not want the truck. *Id.* Plaintiff retrieved the Jeep on May 2, 2003. *Resp.* at ¶ 44.

Rivas never spoke with Dooley regarding the towing or impounding of the truck or its subsequent sale. *Resp.* at ¶ 45. Rivas' work was done at the sole direction of the Sevier County Sheriff's Office. *Rivas' Affidavit* at ¶ 9. Rivas was told the Sheriff's Office was acting at the direction and with the consent of Gretchelynn when it called for the vehicles to be towed. *Id.*

FMCC took possession of the truck, sold it, and then filed a lawsuit against Gretchelynn individually and doing business as the Ranch to collect the remainder owed on the purchase contract. *Resp.* at ¶ 48. Gretchelynn filed an answer to the complaint. *Dooley's Affidavit* at ¶ 10 and attached Exhibit D-2. She admitted she was doing business as the Ranch and admitted to being the owner of the truck. *Id.* Neither Dooley nor DFC was involved in the lawsuit brought by FMCC against Gretchelynn. *Resp.* at ¶ 50. Dooley is not an employee, officer, or owner of FMCC. *Id.* at ¶ 55.

The Ranch was the original purchaser of the truck and the certificate of title was issued in the name of the Ranch. *Resp.* at ¶ 52. The title to the truck remained in the name of the Ranch through the repossession of the truck and sale by FMCC. *Id.*

The Ranch was incorporated on July 20, 1994. *Resp.* at ¶ 53. Gretchelynn signed the articles of incorporation as the sole incorporator. *Id.* The Ranch was dissolved on December 21, 2001. *Id.* at ¶ 54(A). The articles of dissolution were signed only by Gretchelynn as president. *Id.* at ¶ 54(B). According to the articles of dissolution, any property remaining in the corporation, real or personal, was transferred back to Gretchelynn. *Exhibit F to Dooley's Affidavit.*

Although he was not the record title holder, Plaintiff contends the truck was recorded on his personal property taxes. *Resp.* at ¶ 51. He also indicates the truck was to be transferred into his name. *Id.* at ¶ 51 & ¶ 54(C).

Neither Dooley or DFC had any financial responsibility for the truck in March of 2003. *Resp.* at ¶ 10. According to Dooley, he had no involvement in, or prior knowledge of, the repossession or resale of the truck in March of 2003. *Dooley's Affidavit* at ¶ 4. Neither Dooley or any other employee of DFC contacted Sheriff Partain or any of his deputies requesting the repossession of the truck. *Id.* at ¶ 6. Neither Dooley or any DFC employee participated in the planning for, or taking possession of, towing, storing, or selling, of the truck. *Id.* at ¶ 7. After this lawsuit was filed, Dooley learned that on March 6, 2003, the truck was on Gretchelynn's property and she asked the deputy sheriffs to remove the truck. *Id.* at ¶ 8.

According to Plaintiff, Dooley was notified by Sheriff Partain on or about March 6, 2003, at DFC about the location of the truck. *Resp.* at ¶ 9. Plaintiff maintains employees of DFC had been searching for the truck for some time and Partain and his deputies had knowledge of DFC's search for the truck. *Id.* at ¶ 12.

Plaintiff never spoke with Sheriff Partain about the removal of the truck from Gretchelynn's property in March of 2003. *Resp.* at ¶ 58. Plaintiff maintains Partain had knowledge of, and participated in, the removal of the truck. *Id.* at ¶ 57. Specifically, Plaintiff maintains Partain made a call to DFC regarding the location of the truck on or about March 6, 2003. *Id.* Plaintiff asserts Partain in conspiracy with Dooley used his office to remove the vehicles from the Ranch even though no evidence was found in them. *Id.* at ¶ 59.

With respect to Dooley, Plaintiff maintains he, DFC, and Partain conspired to have the truck repossessed. *Resp.* at ¶ 60. Plaintiff maintains DFC was actively looking for the truck. *Id.* at ¶ 3. Plaintiff asserts that Dooley and Partain are part of a continuing criminal enterprise in Sevier County and this is only one of the times they have conspired to defraud people of their property. *Id.* at ¶ 60. Plaintiff maintains Dooley is attempting to extort money from him. *Id.*

## II.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor."  *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  Discussion

Defendants have now moved for summary judgment.  First, Defendants argue Plaintiff's claims are barred by the statute of limitations.  Second, Defendants argue the Plaintiff has no standing to bring the claims.  Finally, Defendants argue they had no personal involvement in any alleged constitutional deprivation.

### A.  Statute of Limitations

Section 1983 does not contain its own statute of limitation.  Instead, causes of action under § 1983 are governed by "the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)(§ 1981 case).  *See also Wilson v. Garcia*, 471 U.S. 261, 268 (1985)(§ 1983 case).  In Arkansas, this is the three year personal injury statute of

limitations, Ark. Code Ann. 16-56-105(3) (2005). *See Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001)(Ark. Code Ann. § 16-56-105(3) is the statute of limitations applicable to § 1983 cases).

In the complaint, Plaintiff alleges the truck was impounded or repossessed on March 13, 2003. However, it has become clear from the summary judgment materials that the truck was actually impounded on March 6, 2003.

The complaint in this case was filed *nunc pro tunc* on March 7, 2006, based on the post-mark contained on the envelop Plaintiff used to mail the complaint to the court (Doc. 6). Defendants assert that the alleged actions that are the basis for the complaint in this action occurred more than three years prior to the filing of the complaint. They therefore ask for the case to be dismissed.

On the surface, it does appear that the complaint was "filed" three years and one day after the events at issue. However, Plaintiff was incarcerated in the Arkansas Department of Correction at the Cummins Unit located in Grady, Arkansas, when he filed the complaint. The complaint was signed on March 5, 2006. His application to proceed *in forma pauperis* was signed on March 4, 2006. The envelop in which Plaintiff mailed the complaint is post-marked in Little Rock, Arkansas on March 7, 2006. Grady is located approximately sixty-eight miles from Little Rock.

Under what is commonly known as the "mail box" rule, a legal document is deemed filed on the day the inmate delivers the document to prison authorities for mailing to a court. *See e.g., Houston v. Lack*, 487 U.S. 266, 270, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988). The Court of Appeals for the Eighth Circuit has applied the mail box rule to the filing of civil rights complaints. *See e.g., Sulik v. Taney County*, 316 F.3d 813, 815 (8th Cir. 2003). Applying the mail box rule in this case, Plaintiff is deemed to have "filed" the complaint on March 5, 2006. Thus, the three year statute of limitations had not expired when the complaint was "filed."

### B. Standing

Defendants next argue Plaintiff has no standing in this case. They point out that the towing and removal of the truck was authorized by its owner, Gretchelynn. They note there was no evidence

the truck title was transferred to any other party.  Defendants point out that when the Ranch was dissolved the articles of dissolution specifically stated all remaining property, both real and personal, was transferred to Gretchelynn.  Furthermore, Defendants note Gretchelynn was also the owner of the real property on which the truck was located.

"Article III of the United States Constitution confines the federal courts to adjudicating actual 'cases and controversies.'" *Boyle v. Anderson*, 68 F.3d 1093, 1100 (8th Cir. 1995)(citation omitted). "Article III standing is a threshold question in every federal court case." *United States v. One Lincoln Navigator*, 328 F.3d 1011, 1013(8th Cir. 2003).  "To have standing, a party must have 'a personal stake in the outcome of the controversy.'" *In re MBA Poultry, LLC,* 295 F.3d 886, 888 (8th Cir. 2002)(*quoting, Warth v. Seldin,* 422 U.S. 490, 498-99, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). "To satisfy this requirement, the plaintiff must have 'a definite and concrete controversy involving adverse legal interests at every stage in the litigation . . . for which the court can grant specific and conclusive relief.'" *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001).

In *Potthoff*, the Eighth Circuit went on to discuss the various dimensions of standing.  It stated:

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action. *Warth v. Seldin,* 422 U.S. 490, 498-99, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (citations and internal quotation marks omitted).

> Additionally, under the prudential limits of the standing doctrine, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement,

[the Supreme Court] has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499, 95 S. Ct. 2197.

*Potthoff*, 245 F.3d at 715.

Under Arkansas law, "[t]itle . . . establishes a *prima facie* case of ownership; however, ultimate ownership is to be established by all evidence regarding property." *Beatty v. USAA Cas. Ins. Co.*, 330 Ark. 354, 360, 954 S.W. 2d 250 (1997). Although he was not the purchaser of the truck or the record title holder of the truck, Plaintiff asserts that the truck was listed on his personal property taxes and was being taken over by him as owner. *Resp.* at ¶ 51. He also asserts the truck title was to be transferred into his name. *Id.* at ¶ 54(C). We conclude Plaintiff had a sufficient interest in the truck to support standing. We therefore turn to the merits of the claim.

### C. The Impounding and Repossessing of the Truck

"To state a claim under section 1983, a plaintiff must demonstrate that the defendant deprived him/her of a constitutional right while acting under color of state law." *Hassett v. Lemay Bank and Trust Co.*, 851 F.2d 1127, 1129 (8th Cir. 1988). "The under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful. However, in certain circumstances the government may become so entangled in private conduct that the deed of an ostensibly private organization or individual is to be treated . . . as if a State had caused it to be performed." *Americans United For Separation of Church and State v. Prison Fellowship Ministries, Inc.,* 509 F.3d 406, 421-22 (8th Cir. 2007)(citations and internal quotation marks omitted).   *See also Sanders v. City of Minneapolis*, 474 F.3d 523, 527(8th Cir.

2007)("[p]rivate actors may incur section 1983 liability only if they are willing participants in a joint action with public servants.")(internal quotation marks and citation omitted).

In this case, Dooley and DFC are private actors.   Plaintiff  makes only the bare allegation that there was some type of conspiracy between Dooley and Partain regarding the repossession of the truck. *Resp.* at ¶ 60.  He asserts Dooley, or employees of DFC, were notified by Partain of the location of the truck on March 6th and knew Partain was taking possession of the truck. *Resp.* at ¶ 9, ¶ 11, ¶ 14.  Plaintiff also asserts that employees of DFC stated they had been actively searching for the truck for some time and Partain and his deputies were aware of this fact. *Resp.* at ¶ 12, ¶ 13.

These bare assertions are insufficient. *See e.g., Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988)(private individuals may act under color of state law when they conspire with state officials, but in order to state conspiracy claim, plaintiff must allege specific facts showing meeting of the minds).   As set forth in detail above, Defendants have submitted to the court in connection with the summary judgment motions the reports of the Sevier County deputies who were at the Ranch on March 6, 2003, as well as the affidavits of Dooley and Rivas.  Rivas, the individual who actually removed the vehicles from the property, indicates he had no contact with, or communication from, Dooley, regarding his picking up, or impounding the truck.  There are no genuine issues of fact as to whether Dooley or DFC were participants in, the towing, removal, storage, or repossession of the truck.

Partain also argues he was not personally involved in the impounding or repossession of the truck and that there is no proof of an unconstitutional county policy.  I agree.  Plaintiff never spoke with Partain about the removal of the truck from Gretchelynn's property. *Resp.* at ¶ 58.  Plaintiff only makes the bare assertion that Partain conspired with Dooley and/or employees of DFC to

accomplish fraud.  *Resp.* at ¶ 59.  As noted above, this bare allegation is insufficient.  *See e.g.,*

*Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988)(in order to state conspiracy claim plaintiff

must allege specific facts showing meeting of the minds).

The only other involvement Partain had is that his deputies were the ones who were present

at the Ranch on March 6, 2003.  However, a supervisor may not be held liable for a section 1983

violation on the basis of *respondeat superior*.  *See Szabla v. City of Brooklyn Park*, 486 F.3d 385,

397 (8th Cir. 2007)(no *respondeat superior* liability under § 1983–no liability merely because

official employs the individual who allegedly violated the plaintiff's constitutional rights); *Mark v.*

*Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement

or responsibility).  In other words, Sheriff Partain is not liable merely because he has general

supervisory authority over the deputies who arrested Plaintiff on March 6th, who spoke with

Gretchelynn, and who contacted Rivas to impound the truck.  Further, the record in this case is

devoid of any suggestion of the existence of a custom or policy on which to hold Sevier County

liable.  *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed.

2d 611 (1978)(holding that a plaintiff seeking to impose § 1983 liability on a municipality must

show an official policy or a widespread custom or practice of unconstitutional conduct that caused

the deprivation of the plaintiff's constitutional rights).  In short, there is nothing to suggest Plaintiff's

alleged constitutional deprivation was caused by a custom or policy of Sevier County.  *See e.g.,*

*Pietrafeso v. Lawrence County*, 452 F.3d 978, 982 (8th Cir. 2006)("A county is liable if an action

or policy itself violated federal law, or if the action or policy was lawful on its face but led an

employee to violate a plaintiff's rights [and] was taken with 'deliberate indifference' as to its known

or obvious consequences.")(internal quotation omitted)).

## IV.  Conclusion

For the reasons stated, I recommend the Defendants' motions for summary judgment (Doc. 12 & Doc. 17) be granted.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of February 2008.


/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE